UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MAURICE JACKSON,

              Petitioner,

v.

CATHERINE BAUMAN,

              Respondent.

_____/

Case No. 2:23-cv-193

Honorable Jane M. Beckering

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Maurice Jackson is incarcerated with the Michigan Department of Corrections at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Following a jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b(1)(a) & (2)(b), and two counts of second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c(1)(a) & (2)(b). The trial court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to 25 to 50 years' imprisonment for each of the CSI-I convictions and 10 to 30 years' imprisonment for each of the CSC-II convictions.

Petitioner filed his initial § 2254 petition on October 3, 2023.[1] In an order (ECF No. 5) entered on October 26, 2023, the Court directed Petitioner to file an amended § 2254 petition

---

[1] Under Sixth Circuit precedent, a § 2254 petition is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner dated his initial petition October 3, 2023, and it is postmarked as of October 4, 2023. The Court, therefore, given Petitioner the benefit of October 3, 2023, as his filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document

within 28 days. After receiving an extension of time to do so (ECF Nos. 6 and 7), Petitioner filed his amended § 2254 petition on December 15, 2023. Petitioner raises the following three grounds for relief in his amended petition:

I.     Prosecutor misconduct by violating my Fourteenth Amendment rights.

II.    Ineffective counsel because he fail[ed] to provide adequate legal assistance.

III.   My Eighth Amendment [rights were] violated by sentencing outside the guidelines.

(Am. Pet., ECF No. 9, PageID.60–63.)

On June 3, 2024, Petitioner filed a motion for summary judgment and bond. (ECF No. 17.) On July 2, 2024, Respondent filed a motion to dismiss Petitioner's § 2254 petition as untimely. (ECF No. 19.) Respondent also filed the state court record. Subsequently, Petitioner filed a proposed second amended § 2254 petition (ECF No. 20), as well as a response to the motion to dismiss (ECF No. 21). For the following reasons, the Court will deny Petitioner's motion for summary judgment and bond. The Court will also deny Respondent's motion to dismiss Petitioner's § 2254 petition as untimely. Upon review of the state court record, the Court concludes that Petitioner has failed to set forth a meritorious federal claim for relief. Accordingly, his § 2254 petition will be denied.

## Discussion

### I.     Factual Allegations

The Michigan Court of Appeals described the events underlying Petitioner's convictions as follows:

---

is deemed under Sixth Circuit law to be the date of handing to officials (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006))).

> The complainant, TA, testified about a visit to [Petitioner's] apartment when she was about eight years old. [Petitioner] and TA's aunt resided together in the apartment. According to TA, during the visit [Petitioner] rubbed her buttocks and back while she was attempting to sleep. Subsequently, [Petitioner] and TA's aunt moved into a new home joined by several family members. TA, her siblings, and TA's mother moved into the home, living there intermittently for a short time. TA's mother would regularly stay at her boyfriend's home, leaving TA and her siblings at their aunt's home. When TA was not actually residing at her aunt's home, she would often visit there. TA testified that when she did stay at the home, [Petitioner] would regularly wake her by rubbing the outside of her thigh. TA also described three or four incidents in which [Petitioner] would walk in on her in the shower and briefly look at her before leaving. TA further testified about two incidents that occurred at the home in 2017. TA indicated that on one occasion [Petitioner] placed his penis on her mouth when she was lying in bed. She additionally testified about a second occasion on which [Petitioner] vaginally penetrated her with his penis before turning her over and anally penetrating her with his penis.

*People v. Jackson*, No. 349960, 2021 WL 220795, at *1 (Mich. Ct. App. Jan. 21, 2021).

Jury selection for Petitioner's trial occurred on June 25, 2019. (Trial Tr. I, ECF No. 18-5.) Over the course of two days, the jury heard testimony from numerous witnesses, including TA, TA's mother, a licensed social worker/professional counselor, law enforcement officers, a pediatrician who specializes in child abuse pediatrics, TA's cousin, and the mother of Petitioner's child. (Trial Tr. I & II, ECF Nos. 18-5, 18-6.) On June 29, 2019, after about only an hour of deliberation, the jury returned a guilty verdict. (Trial Tr. III, ECF No. 18-7, PageID.887.) Petitioner appeared before the trial court for sentencing on July 22, 20219. (ECF No. 18-8.)

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals. On direct appeal, Petitioner raised the following claims: (1) Petitioner was denied due process and a fair trial because the prosecutor committed misconduct by attempting to elicit improper testimony, eliciting testimony that violated prior court rulings, and vouching for TA's credibility; (2) trial counsel was ineffective for failing to object to prosecutorial misconduct, failing to call a witness or ask for a missing witness instruction, failing to move for a mistrial, and

3

instructing Petitioner not to testify; (3) the trial court erred by allowing other-acts evidence concerning allegations of sexual misconduct to be admitted; (4) Petitioner's sentence was disproportionate, unreasonable, and constituted cruel and unusual punishment; and (5) inaccuracies in Petitioner's presentence investigation report (PSIR) violated his constitutional rights. (ECF No. 18-40, PageID.1119.) On January 21, 2021, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences but remanded the matter to the trial court "for the ministerial task of amending the" PSIR. *Jackson*, 2021 WL 220795, at *1. The court of appeals indicated that it was not retaining jurisdiction. *See id.* at *8. On July 6, 2021, the Michigan Supreme Court denied Petitioner's *pro per* application for leave to appeal. *See People v. Jackson*, 961 N.W.2d 180 (Mich. 2021).

On August 3, 2021, Petitioner returned to the trial court and filed a *pro se* motion for relief from judgment pursuant to Michigan Court Rule 6.500. (ECF No. 18-9.) In an order entered on August 23, 2021, the trial court denied Petitioner's Rule 6.500 motion. (ECF No. 18-10.) Petitioner filed a motion for reconsideration on September 8, 2021, which the trial court denied in an order entered on September 14, 2021. (ECF Nos. 18-11, 18-12.) The Michigan Court of Appeals and Michigan Supreme Court denied Petitioner's applications for leave to appeal on February 24, 2022 and May 31, 2022, respectively. (ECF Nos. 18-41, PageID.1212; 18-44, PageID.1416.) The Michigan Supreme Court denied Petitioner's motion for reconsideration on July 28, 2022. *See People v. Jackson*, 977 N.W.2d 541 (Mich. 2022).

Undeterred, Petitioner returned to the trial court and filed a second Rule 6.500 motion on July 14, 2022. (ECF No. 18-13.) In an order entered on August 3, 2022, the trial court denied Petitioner's motion, noting that it "[fell] short of what is required to achieve relief in a subsequent

Motion for Relief from Judgment." (ECF No. 18-14, PageID.948.) On August 4, 2022, Petitioner filed a motion for a new trial (ECF No. 18-15), and he filed two motions for reconsideration of the denial of his second Rule 6.500 motion on August 18, 2022, and August 23, 2022 (ECF Nos. 18-16, 18-17). The trial court denied Petitioner's motion for a new trial on September 16, 2022 (ECF No. 18-18), and denied his motions for reconsideration on September 19, 2022 (ECF No. 18-19).

Petitioner continued to file numerous motions in the trial court. On September 26, 2022, he filed a motion for reconsideration of a new trial. (ECF Nos. 18-20, 18-21.) The trial court denied that motion on October 12, 2022. (ECF No. 18-1, PageID.228.) Petitioner filed a motion to set aside the judgment for evidentiary hearing on October 18, 2022. (ECF No. 18-23.) Petitioner filed a second motion to set aside the judgment for evidentiary hearing on October 24, 2022. (ECF No. 18-24.) In an order entered on October 27, 2022, the trial court denied Petitioner's motion to set aside judgment for evidentiary hearing. (ECF No. 18-25.)

On November 9, 2022, Petitioner filed a motion for a directed verdict of acquittal (ECF No. 18-26), as well as a motion to set aside judgment or evidentiary hearing (ECF No. 18-27). On November 14, 2022, Petitioner filed a motion for reconsideration to set aside judgment for evidentiary hearing. (ECF No. 18-28.) In orders entered on November 16, 2022, the trial court denied Petitioner's motion for a directed verdict of acquittal and for reconsideration to set aside judgment for evidentiary hearing. (ECF Nos. 18-29, 18-30.)

On January 5, 2023, the trial court denied another motion for new trial that Petitioner had filed on December 12, 2022. (ECF No. 18-31.) Shortly thereafter, on January 20, 2023, Petitioner filed a motion to dismiss. (ECF No. 18-32.) The trial court denied that motion in an order entered

on February 6, 2023. (ECF Nos. 18-33, 18-34.) On May 1, 2023, Petitioner filed yet another motion for relief from judgment. (ECF No. 18-35.) The trial court denied that motion in an order entered on May 15, 2023. (ECF No. 18-36.)

On June 21, 2023, the Michigan Court of Appeals denied a delayed application for leave to appeal, motion to dismiss, and motion for relief from judgment filed by Petitioner. (ECF No. 18-42, PageID.1305.) Petitioner did not seek leave to appeal that decision to the Michigan Supreme Court. (ECF No. 18-45, PageID.1522.)

In an order entered on August 21, 2023, the trial court denied yet another motion for new trial that Petitioner had filed on August 14, 2023. (ECF No. 18-37.) Thereafter, Petitioner initiated these § 2254 proceedings by filing his initial petition with this Court on October 3, 2023. Subsequently, Petitioner filed yet another motion for relief from judgment in the trial court. (ECF No. 18-38.) The trial court denied that motion in an order entered on December 23, 2023. (ECF No. 18-39.)

## II.    Motion for Summary Judgment and Bond

As noted above, Petitioner has filed a motion for summary judgment and bond in this matter. (ECF No. 17.) Petitioner appears to suggest that he is entitled to summary judgment pursuant to Rule 56(e) of the Federal Rules of Civil Procedure "because the record evidence do[es] not support the jury findings." (*Id.*, PageID.209.)

The Rules Governing Section 2254 Cases provide that while the Federal Rules of Civil Procedure may be applied in habeas cases, their application is permitted "only to the extent that they are not inconsistent with any statutory provisions." *See* Rule 12, Rules Governing Section 2254 Cases in the United States District Courts. The Sixth Circuit and district courts within the circuit have recognized that either party may make a Rule 56 motion in a habeas proceeding. *See*

6

*Sanders v. Freeman*, 221 F.3d 846, 851 (6th Cir. 2000); *Workman v. Bell*, 178 F.3d 759, 765 (6th Cir. 1998); *Redmond v. Jackson*, 295 F. Supp. 2d 767, 769–70 (E.D. Mich. 2003) (addressing respondent's motion for summary judgment based on statute of limitations).

However, Rule 56 and the standard set forth under AEDPA are not congruent. On a motion for summary judgment, the moving party bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In contrast, § 2254(e)(1) alters this rule by presuming state court factual findings to be correct unless rebutted by clear and convincing evidence. Hence, "due to the statutory presumption of correctness, the petitioner faces a comparatively higher burden in establishing the genuineness (or hearing worthiness) of contested facts." *Hauck v. Mills*, 941 F. Supp. 683, 687 (M.D. Tenn. 1996) (citing *Sumner v. Mata*, 449 U.S. 539, 547 (1981)) (stating that when state and federal courts review the same record, comity and federalism concerns mandate deference to state court factual findings). The Court, therefore, sees no reason to consider Petitioner's separate motion for summary judgment when reviewing Petitioner's § 2254 petition under the AEDPA standard set forth *infra*. *See Dellinger v. Mays*, No. 3:09-CV-104, 2018 WL 4102241, at *5 (E.D. Tenn. Aug. 28, 2018) ("Because review in this case is governed by the standards set forth in § 2254, the Court will not grant summary judgment in Petitioner's favor due to an asserted lack of compliance with the dictates of Rule 56.").

Although Petitioner has titled his motion one for "summary judgment and bond," nowhere in his motion does he set forth any argument in support of his request for bond. In *Dotson v. Clark*, 900 F.2d 77 (6th Cir. 1990), the Court of Appeals recognized that, in limited circumstances, a district court may grant bond pending a decision on the merits of a habeas corpus petition. The *Dotson* court indicated, however, that the power to release petitioner on bond must be exercised sparingly and only in the presence of exceptional circumstances. *Dotson*, 900 F.2d at 79; *see also Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993). Under *Dotson*, the prisoner seeking release on bond "must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of some 'circumstance making the [motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Dotson*, 900 F.2d at 79 (quoting *Aronson v. May*, 85 S. Ct. 3, 5 (1964) (Douglas, J., in chambers)). The habeas petitioner, who is incarcerated under a presumptively valid criminal conviction, is on a much weaker footing than a pretrial accused or even a convicted defendant waiting appeal. *See Ostrer v. United States*, 584 F.2d 594, 599 (2d Cir. 1978).

Applying the two-prong test in *Dotson*, this Court finds neither a substantial claim on the merits of the petition nor exceptional circumstances deserving special treatment in the interest of justice. Petitioner's motion is perfunctory and states no substantial basis for the extraordinary relief he seeks. He contends, in a conclusory fashion, that he is innocent of the charges for which he was convicted. However, as discussed *infra*, Petitioner is not entitled to habeas relief with respect to any of the grounds for relief raised in his amended § 2254 petition. Accordingly, Petitioner is not entitled to bond.

For the foregoing reasons, Petitioner's motion for summary judgment and bond (ECF No. 17) will be denied.

### III.  Statute of Limitations

Respondent claims that Petitioner's application is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured. Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). As set forth above, the Michigan Supreme Court denied Petitioner's *pro per* application for leave to appeal on July 6, 2021. *See*

*People v. Jackson*, 961 N.W.2d 180 (Mich. 2021). Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court. The one-year limitations period, however, did not begin to run until the time in which Petitioner could have sought certiorari expired. *See Lawrence v. Florida*, 549 U.S. 327, 332–33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). Here, that period expired 150 days after July 6, 2021, or on Friday December 3, 2021. *See Rules of the Supreme Court of the United States-Miscellaneous Order addressing the Extension of Filing Deadlines [COVID-19]*, 334 F.R.D. 801 (2020) (extending the period to file a petition for certiorari from 90 days to 150 days for petitions due on or after March 19, 2020); *Miscellaneous Order Rescinding COVID-19 Orders*, 338 F.R.D. 801 (2021) (rescinding the extension for orders denying discretionary review issued on or after July 19, 2021).

Under § 2244(d)(1)(A), Petitioner, therefore, had one year from December 3, 2021, until Monday, December 5, 2022, to file his § 2254 petition. *See Moss v. Miniard*, 62 F.4th 1002, 1009–10 (6th Cir. 2023) (clarifying that "the limitations period would . . . end on the anniversary of the finality date"); *see also* Fed. R. Civ. P. 6(a)(1)(C) (noting that when the last day of a period stated in days or a longer unit of time falls on a Saturday, Sunday, or legal holiday, the "period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"). Petitioner did not initiate § 2254 proceedings until October 3, 2023, when he filed his initial § 2254 petition. Petitioner, therefore, obviously initiated § 2254 proceedings more than one year after the limitations period began to run. Thus, absent tolling, his § 2254 petition is time-barred.

A.      **Statutory Tolling**

The one-year limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (limiting the

tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").

Petitioner filed his first Rule 6.500 motion on August 3, 2021. (ECF No. 18-9.) Those Rule 6.500 proceedings remained pending until the Michigan Supreme Court denied Petitioner's motion for reconsideration of the denial of his application for leave to appeal on July 28, 2022. *See People v. Jackson*, 977 N.W.2d 541 (Mich. 2022); *see also Scarber v. Palmer*, 808 F.3d 1093, 1097 (6th Cir. 2015) (noting that statutory tolling is proper when a petitioner has the opportunity to file and actually does file a motion for reconsideration of an adverse decision by the Michigan Supreme Court denying leave for further appeal form the denial of state collateral review).

Because Petitioner filed his first Rule 6.500 motion while his time period for petitioning the United States Supreme Court for certiorari was still running, the limitations period did not begin to run until July 29, 2022, the day after the Michigan Supreme Court denied Petitioner's motion for reconsideration. Accordingly, Petitioner had one year from July 29, 2022, or up to and including Monday, July 31, 2023, to file his § 2254 petition. *See Moss*, 62 F.4th at 1009–10 (noting that "the limitations period [runs] . . . *from and including* the day following the day of finality . . . *to and including*" "the anniversary of the date of finality" (emphasis in original)); *see also* Fed. R. Civ. P. 6(a)(1)(C). Thus, Petitioner could timely file his petition up to and including July 31, 2023.

Petitioner did not initiate § 2254 proceedings until October 3, 2023, a little over two months after the limitations period expired. However, as set forth *supra* in the Court's discussion of the procedural history, Petitioner filed numerous motions seeking relief in the trial court. The Court, therefore, must determine whether any of those motions tolled the one-year limitations period further.

### 1.      Motions for Relief from Judgment

Petitioner filed a second Rule 6.500 motion on July 14, 2022, and that motion was denied by the trial court in an order entered on August 3, 2022. (ECF Nos. 18-13, 18-14.) Although Petitioner filed that motion before his one-year limitations period began running, the trial court denied it five days after the limitations period began running on July 29, 2022. As set forth above, the trial court denied Petitioner's motion because it "[fell] short of what is required to achieve relief in a subsequent Motion for Relief from Judgment." (ECF No. 18-14, PageID.948.)

The trial court also noted that Petitioner's second Rule 6.500 motion had not met the standards set forth under Michigan Court Rule 6.502(G)(2). (*Id.*) The United States Court of Appeals for the Sixth Circuit has held that a collateral attack denied under Rule 6.502(G) is not properly filed for purposes of statutory tolling. *See Williams v. Birkett*, 670 F.3d 729, 733–36 (6th Cir. 2012); *see also Kares v. Morrison*, 77 F.4th 411, 418 (6th Cir. 2023) (reaffirming *Williams*' vitality). Petitioner, therefore, is not entitled to statutory tolling for the five days from August 29, 2022, when his one-year limitations period began running, and August 3, 2022, when the trial court denied his second Rule 6.500 motion.

Petitioner filed a third motion for relief from judgment on May 1, 2023. (ECF No. 18-35.) The trial court denied that motion in an order entered on May 15, 2023. (ECF No. 18-36.) In doing so, the trial court noted that Petitioner's motion was a "successive Motion for Relief from Judgment, although Defendant has not styled the motion as such." (*Id.*, PageID.1050.) The trial court noted that Petitioner was asserting "similar arguments [Petitioner] previously raised in a variety of other motions, all of which have been denied." (*Id.*) The trial court noted that it "[did] not find merit in [Petitioner's] argument [regarding subject-matter jurisdiction], especially given the lack of a legal foundation to support the argument." (*Id.*, PageID.1052.) While the trial court did not explicitly cite Michigan Court Rule 6.502(G) as the basis for denying Petitioner's motion,

the trial court essentially concluded that Petitioner had not met the standards set forth in Rule 6.502(G)[2] for filing a successive Rule 6.500 motion. The Court, therefore, concludes that Petitioner is not entitled to statutory tolling for the period of time during which proceedings on his third motion for relief from judgment were pending in the state courts.

Finally, Petitioner filed a fourth motion for relief from judgment on November 20, 2023, which the trial court denied on December 13, 2023. (ECF Nos. 18-38, 18-39.) Petitioner, however, filed that motion after initiating § 2254 proceedings in this Court. Accordingly, Petitioner's fourth motion for relief from judgment, even if properly filed in the state courts, cannot serve to toll the one-year limitations period. *Cf. Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 20023) (noting that the statutory tolling provision does not "revive" the limitations period; it does not "restart the clock . . . it can only serve to pause a clock that has not yet fully run").

In sum, the Court concludes that Petitioner is not entitled to statutory tolling of the one-year limitations period for the periods of time during which his second, third, and fourth motions for relief from judgment were pending in the state courts. The Court next considers whether any of Petitioner's other motions for relief serve to toll the limitations period.

### 2.    Other Motions

On August 4, 2022, Petitioner filed a motion for a new trial, which the trial court denied in an order entered on September 16, 2022. (ECF Nos. 18-15, 18-18.) On August 26, 2022, Petitioner filed a motion for reconsideration for relief from judgment or an evidentiary hearing. (ECF No. 18-1, PageID.228.) The trial court denied that motion on September 19, 2022. (*Id.*)

---

[2] Under Rule 6.502(G), a defendant may file a second or subsequent Rule 6.500 motion based upon: (1) "a retroactive change in law that occurred after the first motion for relief from judgment was filed;" (2) "a claim of new evidence that was not discovered before the first such motion was filed"; or (3) "a final court order vacating one or more of the defendant's convictions either described in the judgment from which the defendant is seeking relief or upon which the judgment was based." *See* Mich. Ct. R. 6.502(G)(2).

Petitioner filed a motion for reconsideration of a new trial on October 3, 2022. (ECF No. 18-21.) The trial court denied that motion on October 12, 2022. (ECF No. 18-1, PageID.228.) Petitioner filed a motion to set aside the judgment for evidentiary hearing on October 18, 2022. (ECF No. 18-23.) Petitioner filed a second motion to set aside the judgment for evidentiary hearing on October 24, 2022. (ECF No. 18-24.) In an order entered on October 27, 2022, the trial court denied Petitioner's motion to set aside judgment for evidentiary hearing. (ECF No. 18-25.)

On November 9, 2022, Petitioner filed a motion for a directed verdict of acquittal (ECF No. 18-26), as well as a motion to set aside judgment or evidentiary hearing (ECF No. 18-27). On November 14, 2022, Petitioner filed a motion for reconsideration to set aside judgment for evidentiary hearing. (ECF No. 18-28.) In orders entered on November 16, 2022, the trial court denied Petitioner's motion for a directed verdict of acquittal and for reconsideration to set aside judgment for evidentiary hearing. (ECF Nos. 18-29, 18-30.)

On January 5, 2023, the trial court denied another motion for new trial that Petitioner had filed on December 12, 2022. (ECF No. 18-31.) Shortly thereafter, on January 20, 2023, Petitioner filed a motion to dismiss. (ECF No. 18-32.) The trial court denied that motion in an order entered on February 6, 2023. (ECF Nos. 18-33, 18-34.) In an order entered on August 21, 2023, the trial court denied yet another motion for new trial Petitioner had filed on August 21, 2023. (ECF No. 18-37.)

In *Wall v. Kholi*, 562 U.S. 545 (2011), the United States Supreme Court addressed the question of whether a particular motion under state law qualified as a "post-conviction or other collateral review" motion that would serve to toll the one-year limitations period. The Supreme Court noted that "although methods of filing for collateral review may vary among the states, collateral review 'refers to judicial review that occurs in a proceeding outside of the direct review

14

process.'" *Kares*, 77 F.4th at 420 (quoting *Wall*, 562 U.S. at 560). The Court ultimately concluded that a motion to reduce sentence brought pursuant to Rule 35 of Rhode Island's Superior Court Rules of Criminal Procedure qualified as a motion for collateral review and, therefore, served to toll AEDPA's limitations period. *See Wall*, 562 U.S. at 555.

Moreover, in *Kares*, the Sixth Circuit recently concluded that a post-conviction petition for DNA testing and a new trial filed pursuant to Mich. Comp. Laws § 770.16 constitutes a motion for collateral review that tolls AEDPA's limitations period. *See Kares*, 77 F.4th at 422. In so holding, the Sixth Circuit noted that the statute in question "require[d] reexamination of the underlying judgment because it requires the reviewing court, upon receipt of test results indicating that the defendant is not the source of the DNA, to hold a hearing" to make factual determinations regarding specific inquiries set forth in the statute. *Id.* at 421–22. The Sixth Circuit based that determination on the Supreme Court's decision in *Wall*, which defined "'collateral review' of a judgment or claim" to mean "a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." *See Wall*, 562 U.S. at 553.

Upon review of Petitioner's motions and the trial court's orders denying them, the Court concludes that these various other motions qualify as motions for collateral review that serve to toll AEDPA's limitations period. Although none of Petitioner's motions were successful, statutory tolling of the limitations period is not dependent upon the success of the motion. *See Kares*, 77 F.4th at 421. In each order, the trial court essentially considered Petitioner's various arguments and concluded that Petitioner had failed to raise any claim warranting relief. Moreover, the trial court noted further that some of Petitioner's motions did not warrant relief under Michigan Court Rule 6.508(D), which sets forth the standard that must be met to grant a motion for relief from judgment. (ECF Nos. 18-25, PageID.999; No. 18-30, PageID.1025.) In each order, the trial court

15

essentially engaged in a "judicial reexamination of [Petitioner's criminal] judgment . . . in these proceeding[s] outside of the direct review process." *Wall*, 562 U.S. at 553. The Court, therefore, concludes that Petitioner is entitled to statutory tolling of the AEDPA limitations period for the time periods during which each of these motions was pending before the trial court.

In light of the foregoing conclusion, Petitioner is entitled to statutory tolling for the following periods of time: (1) August 4, 2022 until October 12, 2022, while Petitioner's first motion for a new trial and motion for reconsideration from the denial thereof were pending, and while his motion for reconsideration from judgment or an evidentiary hearing were pending; (2) October 18, 2022 through October 27, 2022, while Petitioner's motions to set aside judgment for evidentiary hearing were pending; (3) November 9, 2022 through November 16, 2022, when Petitioner's motion for a directed verdict of acquittal, motion to set aside judgment or evidentiary hearing, and motion for reconsideration to set aside judgment for evidentiary hearing were pending; (4) December 12, 2022 through January 5, 2023, while Petitioner's second motion for a new trial was pending; (5) January 20, 2023 through February 6, 2023, while Petitioner's motion to dismiss was pending; and (6) August 14, 2023 through August 21, 2023, while Petitioner's third motion for a new trial was pending.

As noted above, Petitioner's one-year limitations period under AEDPA began to run on July 29, 2022. The limitations period ran for 5 days until August 4, 2022, and was tolled until October 12, 2022. The limitations period then began to run again on October 13, 2022, and ran for another 5 days until October 18, 2022. The period was tolled until October 27, 2022, and it ran for 13 days until November 9, 2022. The period was tolled yet again until November 16, 2022, and then ran for 26 days until December 12, 2022. The period was tolled again until January 5, 2023, and then ran for 15 days until January 20, 2023. The period was tolled again until February 6,

2023, when the trial court denied Petitioner's motion to dismiss. The one-year period then ran for

189 days until August 14, 2023, until it was tolled again before the trial court denied Petitioner's

third motion for a new trial on August 21, 2023. The period then ran for 43 days until October 3,

2023, when Petitioner initiated these § 2254 proceedings.

In sum, upon giving Petitioner the benefit of statutory tolling as set forth above, only 296

days of the one-year limitations period ran before Petitioner initiated the instant § 2254

proceedings. Petitioner's § 2254 petition, therefore, is timely, and the Court need not consider

whether equitable tolling or arguments regarding actual innocence apply. The Court, therefore,

will deny Respondent's motion to dismiss the § 2254 petition as untimely. Although Respondent

requests an additional 60 days to address the merits of Petitioner's § 2254 petition should her

motion to dismiss be denied, the Court concludes that because the state court record has been filed,

a response is not necessary for consideration of Petitioner's three grounds for relief. Accordingly,

the Court will address the merits of those grounds, as well as Petitioner's proposed second

amended § 2254 petition, below.

## IV. Proposed Second Amended § 2254 Petition

On July 18, 2024, the Court received a proposed second amended § 2254 petition from

Petitioner. (ECF No. 20.) Petitioner did not include a motion for leave to amend with his proposed

petition. In the proposed petition, Petitioner asserts the following grounds for relief:

I.   The trial court lacked subject-matter jurisdiction over Petitioner's prosecution because the victim told Dr. Brown that she was not sexually assaulted.

II.  Petitioner's Fourth Amendment rights were violated when he arrested without probable cause.

III. Petitioner's Fifth Amendment rights were violated because the prosecutor failed to produce evidence for every element of the crimes charged.

IV.  Counsel was ineffective for failing to move for dismissal of the charges.

V.    The Eighth Amendment has been violated "based on the false imprisonment of a[] factual[ly] innocent man."

VI.   Petitioner's due process rights were violated when the prosecutor "used testimony from a[n] uncharge[d] crime to mislead the jury that [Petitioner] had sexually assaulted other young girls the same way to obtain a tainted conviction."

(*Id.*, PageID.1551–53.) Even though Petitioner has not moved the Court for leave to further amend or supplement his petition, the Court will consider whether he should be allowed to do so.

Amendment and supplementation of § 2254 petitions is governed by Rule 15 of the Federal Rules of Civil Procedure. *See Oleson v. United States*, 27 F. App'x 566, 568 (6th Cir. 2001) (explaining that an application for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"). Rule 15(a)(1) provides that a party may amend a pleading **once** as a matter of course no later than the earlier of the two following periods: (1) 21 days after service; or (2) 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f). *See* Fed. R. Civ. P. 15(a)(1)(A)–(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). In evaluating the interests of justice, the Court should consider several factors, including "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment[.]" *Coe v. Bell,* 161 F.3d 320, 341 (6th Cir. 1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). Moreover, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *See* Fed. R. Civ. P. 15(d).

18

Any attempt to raise a new claim for relief in a Rule 15 motion to amend or supplement is subject to the one-year statute of limitations set forth in § 2244(d)(1). *See Mayle v. Felix*, 545 U.S. 644, 664 (2005). As discussed *supra*, 296 days of the one-year limitations period elapsed before Petitioner initiated § 2254 proceedings on October 3, 2023. Petitioner dated his proposed second amended § 2254 petition on July 10, 2024. (ECF No. 20, PageID.1554.) This proposed amendment was, therefore, filed well after the limitations period under AEDPA expired.

Amendment or supplementation of a § 2254 petition will be denied "where it is filed after [the limitations] period expires unless the proposed amendment relates back to the date of the original pleading within the meaning of Rule 15(c)[(1)]." *See Howard v. United States*, 533 F.3d 472, 475–76 (6th Cir. 2008). Rule 15 states that an amendment to a complaint relates back to the original complaint when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). "The key words are 'conduct, transaction, or occurrence," which mean that an original motion and a supplemental motion must "state claims that are tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 656, 664 (2005) (footnote omitted). An amended motion does not relate back to an original petition "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.

Here, Petitioner's first proposed additional ground—that the trial court lacked subject-matter jurisdiction because the victim told Dr. Brown that she was not sexually assaulted—appears to relate back to Petitioner's claim that the prosecution should never have brought charges against him in the first place. However, it would be futile to allow Petitioner to amend his § 2254 petition to assert this claim because it is essentially duplicative of Petitioner's prosecutorial misconduct

claim. Moreover, although Petitioner did assert a claim challenging the trial court's jurisdiction in his initial § 2254 petition (Pet., ECF No. 1, PageID.7), the Court advised Petitioner in its order directing him to file an amended petition that the amended petition "[would] take the place of the original petition." (ECF No. 5, PageID.38.) Petitioner chose not to raise a claim regarding the trial court's jurisdiction in his amended § 2254 petition. Accordingly, the Court will not grant Plaintiff leave to amend to assert his jurisdictional claim.

Moreover, none of the other grounds Petitioner asserts in his proposed second amended § 2254 petition have any traceable relationship back to the grounds raised in his amended § 2254 petition. While Petitioner has asserted an ineffective assistance of counsel claim in both his amended § 2254 petition and his proposed amendment, a petitioner "does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *Watkins v. Deangelo-Kipp*, 854 F.3d 846, 850 (6th Cir. 2017). Accordingly, Petitioner's proposed second amended § 2254 petition is foreclosed by § 2244(d)(1)'s one-year limitations period, and the grounds raised therein do not relate back to the grounds Petitioner initially raised. The Court, therefore, will not consider the merits of the grounds set forth in Petitioner's proposed amendment and will only consider the three grounds for relief raised in his amended § 2254 petition. (ECF No. 9.)

## V.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in

federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the

22

underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## VI.   Discussion

### A.   Ground I—Prosecutorial Misconduct

As his first ground for relief, Petitioner contends that the prosecutor committed misconduct in violation of Petitioner's Fourteenth Amendment rights. (Am. Pet., ECF No. 9, PageID.60.) According to Petitioner, the prosecutor should never have charged him "because the alleged victim told the doctor and Child Protective Services that she wasn't sexually assaulted." (*Id.*) Petitioner goes on to state that "Doctor Brown never found any evidence to prove that [TA] was penetrated nor [did] Det. Kristin Cole find any evidence of assault[]." (*Id.*) Petitioner essentially contends that the prosecutor committed misconduct by charging him in the first place.

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–

23

12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. 637, 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation marks omitted).

A review of Petitioner's numerous post-conviction motions indicates that he first raised this argument in his motion for directed verdict of acquittal. (ECF No. 18-26.) In that motion, Petitioner asserted that the prosecution "failed to meet its minimal burden at the charging stage" because the victim told Child Protective Services and Dr. Brown that "she wasn't sexually assaulted." (*Id.*, PageID.1002–1003.) The trial court denied Petitioner's motion in its November 16, 2022 order. (ECF No. 18-29.)

The Michigan appellate courts have recognized that prosecutors in Michigan "ha[ve] broad charging discretion," and any review of that discretion is limited to "whether an abuse of power occurred; that is, whether the charging decision was made for reasons that are unconstitutional,

24

illegal, or ultra vires." *In re Eaton*, No. 257010, 2005 WL 3116529, at *1 (Mich. Ct. App. Nov. 22, 2005); *see also People v. Venticinque*, 586 N.W.2d 732, 100 (Mich. 1998) ("We have repeatedly recognized that the decision whether to bring a charge and what charge to bring lies in the discretion of the prosecutor."). Here, as noted above, the prosecution charged Petitioner with two counts of CSC-I, in violation of Mich. Comp. Laws § 750.520b(1)(a) & (2)(b), for sexual penetration of someone under the age of 13 by an individual 17 years of age or older, and two counts of CSC-II, in violation of Mich. Comp. Laws § 750.520c(1)(a) & (2)(b), for sexual contact with someone under the age of 13 by an individual 17 years of age or older.

TA was the only individual who testified at Petitioner's preliminary examination. (ECF No. 18-2, PageID.231.) TA indicated that at the time of the preliminary examination, she was 13 years old. (*Id.*, PageID.234.) TA testified that she would go over to her aunt's residence, where Petitioner resided as well. (*Id.*, PageID.235.) She noted that Petitioner's criminal activity began one day when she and Petitioner were "play[] fighting and he grabbed—like touched me, like grabbed me sexually." (*Id.*, PageID.236.) TA was in elementary school when this happened. (*Id.*)

TA testified further that Petitioner would come into her room in the middle of the night and "rub on [her] back and [her] butt part." (*Id.*, PageID.237.) She noted this happened more than one time. (*Id.*) TA testified that on November 12, 2017, Petitioner was babysitting her and other kids because it was TA's aunt's birthday. (*Id.*, PageID.241–242.) TA testified that she was upstairs with Petitioner when Petitioner pulled down her pants and put his penis inside of her vagina. (*Id.*, PageID.242.) TA testified that on other occasions, Petitioner put his penis inside of her mouth and anus. (*Id.*, PageID.243–246.) TA testified that at the time, Petitioner was older than 17. (*Id.*, PageID.246.)

25

A review of the trial transcript indicates that TA repeated this same testimony during Petitioner's trial. She admitted that when she talked to a doctor or nurse at the hospital, she told them that she had been assaulted, but denied vaginal penetration. (Trial Tr. II, ECF No. 18-6, PageID.638–639.) TA acknowledged that she had testified to the contrary regarding penetration the day before. (*Id.*, PageID.639.)

At trial, Detective Cole testified that for the 10 years prior to Petitioner's trial, she had been "assigned pretty much exclusively to sexual assault crimes." (*Id.*, PageID.732.) She got involved in the case when the initial complaint was assigned to her for a follow-up investigation. (*Id.*, PageID.733.) Detective Cole observed TA's forensic interview at the Child Advocacy Center. (*Id.*, PageID.735.) Detective Cole also interviewed TA's mother, as well as several other people, including a cousin that TA had disclosed Petitioner's actions to. (*Id.*, PageID.735–736.) At that point, Detective Cole believed she "had a crime that was worth investigating." (*Id.*, PageID.736.)

Detective Cole did admit that she did not consider any type of DNA collection because "[t]oo much time had passed since the last incident that [TA] disclosed." (*Id.*, PageID.738–739.) She was aware that TA had a follow-up appointment with Dr. Brown after being seen at the emergency room. (*Id.*, PageID.743.) Contrary to Petitioner's assertion, however, at no time during her testimony did Detective Cole state that she had not found any evidence of assault.

Dr. Sarah Brown, a pediatrician who specializes in child abuse pediatrics, also testified at Petitioner's trial. (*Id.*, PageID.750.) Dr. Brown testified that injuries to female genitalia can heal "very quickly." (*Id.*, PageID.757.) She noted that minor injuries "can heal in hours to days, 48 hours, 72 hours." (*Id.*) Major injuries "can take a couple of weeks to heal," but Dr. Brown said past the three-week mark, it was "very unusual to see any injuries that are not turning into scars." (*Id.*, PageID.757–758.) Dr. Brown testified further that children "who are sodomized very rarely

have anal injuries." (*Id.*, PageID.758.) She noted further that anal and genital injuries "tend to heal in a way that doesn't lead to scarring." (*Id.*)

Dr. Brown testified that she examined TA on November 30, 2018. (*Id.*, PageID.760.) At the time, TA "did not want to have her genitals examined." (*Id.*, PageID.762.) Dr. Brown noted that at the time, "based on the information [she] had available," TA was not "reporting a vaginal assault." (*Id.*, PageID.762.) Dr. Brown did not perform the exam because she respected TA's wishes. (*Id.*) On cross-examination, Dr. Brown admitted that emergency department staff told her that TA had reported that "nothing occurred to her vagina." (*Id.*, PageID.765.) Again, contrary to Petitioner's assertion, Dr. Brown never explicitly testified that she never found any evidence that TA had been penetrated. Indeed, given that Dr. Brown respected TA's wishes to not be examined, it was essentially impossible for Dr. Brown to find such evidence.

Petitioner's prosecutorial misconduct argument is based upon a misreading of the testimony given at trial. TA may not have used the words "sexual assault" when she spoke to a doctor at the hospital, and she may have initially denied vaginal penetration, but that does not automatically lead to a conclusion that she did not tell the doctor and Child Protective Services that Petitioner had touched her in a sexual manner. Moreover, the testimony by Dr. Brown and Detective Cole regarding a lack of evidence of penetration does not automatically lead to a conclusion that the prosecutor committed misconduct by charging Petitioner with two counts of CSC-I and CSC-II.

The Sixth Circuit has noted that it has "long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction." *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008). Moreover, Michigan law explicitly states that "[t]he testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g." *See* Mich. Comp. Laws. § 750.520h.

If a victim's testimony alone is sufficient to sustain a conviction for CSC-I and CSC-II, then it stands to reason that the victim's statement alone is sufficient for a prosecutor to decide whether to bring a charge and what charges to bring. Petitioner simply has not demonstrated that the prosecutor's charging decision rises to the level of constitutionally impermissible prosecutorial misconduct.

In sum, Petitioner has not demonstrated that the trial court's rejection of his prosecutorial misconduct claim is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground I.

### B.      Ground II—Ineffective Assistance of Counsel

As his second ground for relief, Petitioner contends that trial counsel "fail[ed] to provide adequate legal assistance." (Am. Pet., ECF No. 9, PageID.62.) According to Petitioner, counsel deprived him of a "substantial defense" by not calling NA[3] and Robert Atlas as witnesses. (*Id.*) Petitioner avers that both "[were] there the night in question and their testimonies would [have] made a differen[ce] in the out[come] of the trial." (*Id.*)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the [Petitioner] resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

---

[3] Although Petitioner refers to this individual by his full first and last name in his amended § 2254 petition, the Michigan Court of Appeals used "NA" to refer to this individual. Accordingly, the Court does the same in this opinion.

The petitioner bears the burden of overcoming the presumption that "the challenged action 'might be considered sound trial strategy.'" *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Furthermore, scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised his claim regarding counsel's failure to call NA as a witness on direct appeal, and the court of appeals set forth the following standard for ineffective assistance of counsel claims:

> In *People v. Carbin,* 463 Mich. 590, 599–600; 623 N.W.2d 884 (2001), the Michigan Supreme Court recited the well-established principles governing a claim of ineffective assistance of counsel:
>
>> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Quotation marks and citations omitted.]
>
> An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v. Toma*, 462 Mich. 281, 302; 613 N.W.2d 694 (2000).

*Jackson*, 2021 WL 220795, at *1 n.1. Although the court of appeals cited state law for the authority, *Carbin* explicitly quotes *Strickland* as the source of the standard. *See Carbin*, 623 N.W.2d at 889. Thus, there is no question that the court of appeals applied the correct standard.

The court of appeals' application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to"

clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, Petitioner can only overcome the deference afforded state court decisions if the court of appeals' determination was based on an unreasonable application of *Strickland* or if the court of appeals' resolution was based on unreasonable determinations of the facts. *See* 28 U.S.C. § 2254(d).

The court of appeals rejected Petitioner's claim regarding counsel's failure to call NA as a witness, stating:

> [Petitioner] next contends that trial counsel should have presented the testimony of NA.[] [Petitioner] submitted an affidavit with his brief on appeal averring that he asked his attorney to call NA to testify. [Petitioner] believed that NA would testify that he did not see [Petitioner] assault TA and that the prosecutor did not call NA as a witness because he would have exculpated [Petitioner]. [Petitioner], however, has presented no evidence whatsoever of what NA's actual testimony would have been. There is nothing in the record showing that trial counsel failed to investigate calling NA as a witness, that counsel failed to make a reasoned decision not to call NA, or that counsel failed to present evidence that was valuable to [Petitioner].

*Jackson*, 2021 WL 220795, at *4 (footnote omitted).

The court of appeals rejected Petitioner's claim of ineffective assistance because Petitioner had failed to present evidence concerning what NA's testimony would have been. Petitioner has failed to correct this deficiency in his § 2254 proceedings. Nowhere in his numerous filings does Petitioner set forth what he believes Robert Atlas and NA would have testified to and how that testimony would have been beneficial to his defense. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted); *see also Clark v. Waller*, 490 F.3d 551, 558 (6th Cir. 2007) (rejecting an ineffective assistance claim for the petitioner's failure to provide a "basis on which to conclude that failure to call a possibly favorable witness amounts to constitutionally deficient performance"). Overall, Petitioner simply offers nothing from which this Court could conclude that NA and Robert Atlas's testimony would have been helpful at all, much less that it would have led to his acquittal. Thus, there is no basis to conclude that counsel was ineffective for failing to present these two individuals as witnesses.

In sum, Petitioner has not demonstrated that the court of appeals' rejection of his claim of ineffective assistance is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground II.

### C.    Ground III—Sentencing Issues

As his third ground for relief, Petitioner contends that the trial court violated his Eighth Amendment rights by "sentencing outside the guidelines." (Am. Pet., ECF No. 9, PageID.63.) Petitioner avers further that there is "no way that [he] committed three counts of first[-]degree sexual [assault] on a person under the age of thirteen without committing predatory conduct [Offense Variable (OV)] 10 nor any criminal behavior OV 13 being involved." (*Id.*)

1.      **Eighth Amendment Challenge**

The Court will first address Petitioner's challenge that his sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment. Petitioner raised a proportionality and Eighth Amendment argument on direct appeal, and the court of appeals rejected it. *See Jackson*, 2021 WL 220795, at *6–8.

First, to the extent Petitioner believes that his sentence is disproportionate because the trial court sentenced him "outside the guidelines" (Am. Pet., ECF No. 9, PageID.63), the term disproportionate is derived from state court authority regarding sentencing. *See People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017); *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). As noted above, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Thus, any claim by Petitioner that the trial court violated state sentencing guidelines or state sentencing principles regarding disproportionality is purely a state law claim that is not cognizable on habeas review.

In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9–11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id*. at 335–37. In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.

It is clear that *Milbourn* and, thus, *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus."). Because this Court has no power to intervene based on a perceived error of state law, *see Wilson*, 562 U.S. at 5, any claims raised by Petitioner based upon *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

With respect to Petitioner's Eighth Amendment argument, the United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (discussing that gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (holding that principle applies only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980))). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and

unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.

For the foregoing reasons, Petitioner is not entitled to relief with respect to any proportionality and Eighth Amendment arguments he asserts as part of habeas ground III.

### 2.      OV Scoring

Petitioner also takes issue with the scoring of certain OVs to determine his guidelines range. Specifically, Petitioner avers that there is "no way that [he] committed three counts of first[-]degree sexual [assault] on a person under the age of thirteen without committing predatory conduct [Offense Variable (OV)] 10 nor any criminal behavior OV 13 being involved." (Am. Pet., ECF No. 9, PageID.63.)

OV 10 concerns "exploitation of a vulnerable victim." *See* Mich. Comp. Laws § 777.40(1). A defendant is assessed 15 points under OV 10 if "[p]redatory conduct was involved." *Id.*, § 777.40(1)(a). Predatory conduct is defined as "preoffense conduct directed at a victim, or a law enforcement officers posing as a potential victim, for the primary purpose of victimization." *Id.*, § 777.40(3)(a).

OV 13 concerns a "continuing pattern of criminal behavior." *Id.*, § 777.43(1). Notably, a defendant is assessed 25 points under OV 13 if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." *Id.*, § 777.43(1)(c).

As an initial matter, claims concerning the improper application of sentencing guidelines are state law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v.*

*Davis*, 454 U.S. 370, 373–74 (1982) (discussing that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (concluding that alleged violation of state law with respect to sentencing is not subject to federal habeas relief). The Court's liberal construction of Petitioner's claim, however, suggests that Petitioner is asserting that the scoring of these various OVs was based upon inaccurate information and, therefore, that the resulting sentence violated Petitioner's due process rights. As discussed below, Petitioner's claim is meritless.

A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information. In fact, the sentencing transcript indicates that Petitioner is mistaken about how OVs 10 and 13 were scored. At sentencing, the prosecution asked the Court "to score OV 10 for predatory conduct, 15 points." (ECF No. 18-8, PageID.901.) When asked by the court to explain, the prosecutor stated:

> As the facts of this case played out at jury trial it was clear that from approximately 2014 until the end of 2017 that [Petitioner] engaged in a pattern that could be described as predatory in that he increased his involvement with this victim as time went on and also that this behavior was also mirrored in one other witness who

testified regarding a prior incident in Georgia where she had some initial contact with [Petitioner] that was similar.

(*Id.*, PageID.902.) Petitioner's counsel argued that there was "insufficient evidence of predatory conduct concerning this victim in this case to rise to the level of 15 points so we would object to the addition of 15 points believing it is currently scored accurately at zero points." (*Id.*) The trial court agreed with Petitioner's counsel, concluding that the prosecution had not established by a preponderance of the evidence that predatory conduct occurred. (*Id.*, PageID.902–903.) The Court, therefore, denied the prosecution's request to score OV 10, and the scoring of that OV remained at zero.

Furthermore, at sentencing, the prosecution noted that "OV 13 is scored at 25, I'm asking the Court to instead score OV 11 at 25." (*Id.*, PageID.903.) In support of that argument, the prosecutor stated:

> OV 11 involves criminal sexual penetration beyond the scoring offense so as to count one, the other penetration occurred in the same setting, the same situation therefore OV 11 should be scored at 25 but then OV 13 says not to score conduct that was already scored in OV 11 so essentially I'm asking the Court to shift those 25 points to OV 11.

(*Id.*) Petitioner's counsel objected, stating that he thought "OV 13 is more appropriate because of the number of convictions but OV 11 requiring penetration, I don't think there is sufficient evidence from the trial of that." (*Id.*) The trial court agreed with the prosecution, stating:

> The Court is satisfied that there was sufficient evidence during the course of the trial, that there was an additional criminal sexual penetration. I believe OV 11 should be scored at 25 points given what the Court heard and the testimony and what the jury found, I will not score OV 13 that is it will be zero points. I believe it is more appropriate given what was presented in this case that OV 11 is the scoring variable for the conduct.

(*Id.*, PageID.904.) Contrary to Petitioner's argument, therefore, he did not receive any points for OV 13.

Petitioner's arguments regarding the application of the OVs are purely matters of state law. The state court's determinations regarding these OVs and their scoring conclusively resolve this issue; they are axiomatically correct because the decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). For the foregoing reasons, Petitioner is not entitled to relief with respect to his arguments concerning the scoring of OVs 10 and 13.

In sum, Petitioner has not demonstrated that the court of appeals' rejection of his Eighth Amendment challenge to his sentence is contrary to, or an unreasonable application of, clearly established federal law. Moreover, Petitioner's proportionality and OV scoring challenges are purely matters of state law and do not entitle him to federal habeas relief. Petitioner, therefore, is not entitled to relief with respect to habeas ground III.

## VII.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter an Order and Judgment denying Petitioner's motion for summary judgment and bond (ECF No. 17), denying Respondent's motion to dismiss (ECF No. 19) the § 2254 petition as untimely, denying Petitioner's § 2254 petition for failure to assert a meritorious federal claim, and denying a certificate of appealability.


Dated:    September 23, 2024               /s/ Jane M. Beckering
                                          Jane M. Beckering
                                          United States District Judge